## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TORELL VASELL, SHANTEE GRANT, SEAN BIEDERMAN, ALEXANDER ZAJAC, and TODD CAREY individually and on behalf of all others similarly situated, | |
| Plaintiffs, | 1:24-cv-00932-NCM-JRC |
| v. | |
| SEATGEEK, INC., | |
| Defendant. | |

## DEFENDANT SEATGEEK, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, OR, ALTERNATIVELY, TO DISMISS <u>PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 3

    A.    The Parties ........................................................................................... 3

    B.    Plaintiffs' Allegations Regarding SeatGeek's Disclosures.................... 3

    C.    The NAM Plaintiffs Were Required to Accept SeatGeek's Terms of Use Before Using the SeatGeek Website ............................................... 4

    D.    SeatGeek's Terms of Use Contain a Broad Arbitration Provision and Class Action Waiver that Governs the NAM Plaintiffs' Claims.................... 5

        1.    The NAM Plaintiffs Each Accepted SeatGeek's TOU Prior to Making a Purchase on SeatGeek's Website.................................... 5

        2.    Plaintiffs Grant and Vassell Also Previously Accepted the TOU When Creating SeatGeek Accounts........................................... 6

    E.    Plaintiffs Amended Their Complaint After Providing Notice of Intent to Arbitrate ........................................................................................... 8

ARGUMENT .................................................................................................................. 8

    A.    The Court Should Compel the NAM Plaintiffs to Arbitrate Their Claims........... 8

        1.    Legal Standards................................................................................ 8

        2.    The NAM Plaintiffs Each Entered Into a Contract with Binding Arbitration and Class Action Waiver Provisions..................................... 9

        3.    The Arbitration Clause and Class Action Waiver Preclude the NAM Plaintiffs' Claims................................................................... 14

            a.    The Court Should Enforce SeatGeek's Arbitration Clause ......... 14

            b.    The Court Should Delegate Questions of Arbitrability to the Arbitrator................................................................................ 16

            c.    The Court Should Enforce SeatGeek's Class Action Waiver...... 17

    B.    The Court Should Dismiss the FAC Under Rule 12(b)(1) .................................. 17

        1.    Plaintiffs Lack Article III Standing to Pursue Damages Because They Have Not Shown Any Concrete Injury........................................ 18

        2.    Plaintiffs Lack Standing to Pursue Injunctive Relief.............................. 21

    C.    The Court Should Dismiss the Complaint Under Rule 12(b)(6) ........................ 22

        1.    The Voluntary Payment Doctrine Bars Plaintiffs' Claims ..................... 22

        2.    Plaintiffs' Claims for Unjust Enrichment Fail for Additional Reasons ........................................................................................ 23

**TABLE OF CONTENTS**
(continued)

**Page**

CONCLUSION .................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*111 W. 57th Inv. LLC v. 111 W57 Mezz Inv. LLC*,
  220 A.D.3d 435 (1st Dep't 2023) ............................................23

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
  672 F.3d 113 (2d Cir. 2015)...........................................8, 9, 14

*Aminoff & Co. LLC v. Parcel Pro, Inc.*,
  2022 WL 987665 (S.D.N.Y. Apr. 1, 2022).............................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................22

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)................................................................17

*Bassett v. Elec. Arts, Inc.*,
  93 F. Supp. 3d 95 (E.D.N.Y. 2015) .........................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................22

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
  2017 WL 7309893 (S.D.N.Y. Nov. 20, 20217), *report and recommendation
  adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018)...........................12

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020)....................................................21

*Buonasera v. Honest Co., Inc.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016)......................................21

*Castro v. TCA Logistics Corp.*,
  2021 WL 7287305 (E.D.N.Y. Mar. 31, 2021).........................17

*Charles v. Color Factory, LLC*,
  2024 WL 1693236 (S.D.N.Y. Apr. 19, 2024).....................21, 22

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777 (2012) ..............................................................23

*Davis v. Hain Celestial Grp., Inc.*,
  297 F. Supp. 3d 327 (E.D.N.Y. 2018) .....................................21

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
    292 A.D.2d 25 (2d Dep't 2002) ...................................................................................22

*Edmundson v. Klarna, Inc.*,
    85 F.4th 695 (2d Cir. 2023) ...............................................................................10, 11

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018).............................................................................................8

*Favors v. Triangle Servs., Inc.*,
    207 F. Supp. 3d 197 (E.D.N.Y. 2016) ...............................................................9

*Fed. Election Comm'n v. Akins*,
    524 U.S. 11 (1998)..............................................................................................20

*Feld v. Postmates, Inc.*,
    442 F. Supp. 3d 825 (S.D.N.Y. 2020)...............................................................14

*Flores v. Chime Fin., Inc.*,
    2022 WL 873252 (S.D.N.Y. Mar. 23, 2022) ....................................................14

*Garcia v. Nabfly, Inc.*,
    2024 WL 1795395 (S.D.N.Y. Apr. 24, 2024).....................................................12

*Golden v. NBCUniversal Media, LLC*,
    688 F. Supp. 3d 150 (S.D.N.Y. 2023)................................................................23

*Harty v. W. Point Realty, Inc.*,
    28 F.4th 435 (2d Cir. 2022) ...............................................................................19

*Lewis v. Samsung Elecs. Am., Inc.*,
    2023 WL 7623670 (S.D.N.Y. Nov. 14, 2023)....................................................10

*Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*,
    67 F.4th 107 (2d Cir. 2023) ...............................................................................15

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*,
    19 F.4th 58 (2d Cir. 2021) .................................................................................19

*Maldonado v. Nat'l Football League*,
    2023 WL 4580417 (S.D.N.Y. July 18, 2023) ....................................................16

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)........................................................................9, 10, 11

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Nicholas v. Wayfair Inc.*,
    410 F. Supp. 3d 448 (E.D.N.Y. 2019) ..............................................................................10, 15

*Patterson v. Wildlife Conservation Soc'y*,
    Case No. 1:24-cv-00171-JMF (S.D.N.Y. May 22, 2024)..................................................20, 21

*Peiran Zheng v. Live Auctioneers LLC*,
    2021 WL 2043562 (S.D.N.Y. May 21, 2021) .........................................................................11

*Plazza v. Airbnb, Inc.*,
    289 F. Supp. 3d 537 (S.D.N.Y. 2018)....................................................................................16

*Sacchi v. Verizon Online LLC*,
    2015 WL 765940 (S.D.N.Y. Feb. 23, 2015)..........................................................................16

*Salameno v. Gogo Inc.*,
    2016 WL 4005783 (E.D.N.Y. July 25, 2016) ........................................................................14

*Shelton v. CIOX Health, LLC*,
    2018 WL 4211447 (E.D.N.Y. July 20, 2018)........................................................................23

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).............................................................................................................18

*Starkey v. G Adventures, Inc.*,
    796 F.3d 193 (2d Cir. 2015).................................................................................................13

*Teta v. Go N.Y. Tours, Inc.*,
    2024 WL 3252907 (S.D.N.Y. July 1, 2024) .............................................................11, 15, 16

*Thorne v. Square, Inc.*,
    2022 WL 542383 (E.D.N.Y. Feb. 23, 2022).........................................................................16

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)...........................................................................................18, 19, 20, 21

*Tsadilas v. Providian Nat. Bank*,
    13 A.D.3d 190 (1st Dep't 2004) ...........................................................................................17

*Vitrano v. N.A.R., Inc.*,
    2020 WL 1493620 (E.D.N.Y. Mar. 27, 2020).......................................................................17

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
    489 U.S. 468 (1989)..............................................................................................................8

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Worthington v. JetSmarter, Inc.*,
  2019 WL 4933635 (S.D.N.Y. Oct. 7, 2019) ....................................................................13, 16

*Zachman v. Hudson Valley Fed. Credit Union*,
  49 F.4th 95 (2d Cir. 2022) ................................................................................................9

**Statutes**

9 U.S.C. § 1 *et seq* ...........................................................................................................8, 17

New York Arts & Cultural Affairs Law
  § 25.07(4) ...........................................................................................................................1
  § 25.29(1) .........................................................................................................................19

**Other Authorities**

Federal Rule of Civil Procedure
  12(b)(1) ................................................................................................................1, 2, 3, 17
  12(b)(6) ................................................................................................................... *passim*

Defendant SeatGeek, Inc., ("SeatGeek"),[1] hereby respectfully submits this memorandum of law in support of its Motion to Compel Arbitration, or, alternatively, to Dismiss the Amended Class Action Complaint (the "Complaint" or "FAC") of Plaintiffs Torell Vassell, Shantee Grant, Sean Biederman, and Alexander Zajac ("Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[2]

## **INTRODUCTION**

This case is one of 30+ copycat actions filed in New York arising under the "All-In Pricing" law. N.Y. ARTS & CULT. AFF. LAW § 25.07(4). Much like the other cookie-cutter complaints that have flooded New York courts in recent months, Plaintiffs here allege that SeatGeek has been improperly charging customers because certain transaction fees are not shown in the "initially quoted fee." FAC ¶¶ 1–8. These allegations are meritless and none of Plaintiffs' claims should survive this motion.

***First***, Plaintiffs Vassell, Grant, and Biederman ("NAM Plaintiffs") cannot pursue claims in this Court at all because they agreed to resolve their disputes with SeatGeek in arbitration administered by National Arbitration and Mediation. The Complaint elides that they each accepted SeatGeek's Terms of Use (the "TOU") before purchasing tickets on SeatGeek's website. The TOU's arbitration provision clearly applies here, as it requires that "any dispute, claim, or

---

[1] Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added. Citations to "Ex. _" refer to the exhibits attached to the Declaration of Paula Giuliani ("Giuliani Decl.").

[2] According to SeatGeek's records, Plaintiff Zajac opted out of arbitration. Giuliani Decl. ¶¶ 27–28. SeatGeek therefore does not seek to compel his claims to arbitration. SeatGeek has no record of Plaintiffs Vassell, Grant, or Biederman, opting out of arbitration of their claims. *Id.* Additionally, Plaintiff Todd Carey intends to withdraw as a Plaintiff in this action, so SeatGeek does not address his claims here. *See* ECF No. 16 at 1 (conceding that "we have elected to withdraw Plaintiff Carey's claim"). But to the extent Plaintiff Carey seeks to reassert his claims, his claims should be compelled to arbitration, or alternatively, dismissed for the same reasons outlined herein with respect to the claims brought by Plaintiffs Vassell, Grant, and Biederman.

controversy" relating to SeatGeek be resolved in arbitration and that the NAM Plaintiffs litigate their claims individually, not as a class action. Ex. C § 14.4. Indeed, Plaintiffs' counsel implicitly conceded as much by sending SeatGeek notices of arbitration **twice**, including one week prior to amending their Complaint in this action. But even if the Court were to question whether the arbitration clause covers this dispute, which it need not, it must defer that question to an arbitrator, pursuant to the TOU. The Court should therefore compel the NAM Plaintiffs to submit their claims to arbitration.

*Second*, all of Plaintiffs' claims fail under Rule 12(b)(1). As a threshold matter, Plaintiffs do not plead injury-in-fact to support Article III standing for their manufactured copycat claims arising from SeatGeek's purported violations of the All-In Pricing law. Plaintiffs each completed purchases on SeatGeek's website and allege that SeatGeek improperly charged them a fee that was not "initially quoted" to them. FAC ¶¶ 1–8. But Plaintiffs do not plead that they paid a single cent more in fees than is permissible under any applicable law, and even admit that SeatGeek disclosed the transaction fees to them multiple times before they completed their purchases. Rather than point to any concrete injury, Plaintiffs cling to SeatGeek's alleged technical violation of a statute. Even if that theory had merit (and it does not) the Supreme Court has squarely rejected that a statutory violation, standing alone, is sufficient to establish injury-in-fact for Article III standing.

*Third*, to the extent the Court reaches the merits of Plaintiffs' claims (and it need not given the above), Plaintiffs' claims fail under Rule 12(b)(6). The voluntary payment doctrine bars both of Plaintiffs' claims because they admit to purchasing tickets with full knowledge of the fees. Plaintiffs' claims for unjust enrichment fail for additional reasons—*i.e.*, because they are duplicative of Plaintiffs' claims under the All-in Pricing law and a contract governs Plaintiffs' dispute (*i.e.*, the TOU).

For all these reasons, the Court should compel the NAM Plaintiffs' claims to arbitration or, in the alternative, dismiss their claims under Rules 12(b)(1), Rule 12(b)(6), or both. As to Plaintiff Zajac, who opted-out of the arbitration agreement in the TOU, his claims should be dismissed under either Rule 12(b)(1) or 12(b)(6).

## FACTUAL BACKGROUND

### A.      The Parties

SeatGeek is a high-growth global ticketing leader. Its technology platform allows users to buy and sell tickets for a range of events, including live sports, concerts, and theater events.

Plaintiffs are individuals who claim to have purchased tickets through SeatGeek's website after August 29, 2022. FAC ¶¶ 8–11. Their tickets were to events located in New York. *Id.* According to the FAC, Plaintiff Vassell purchased a ticket on SeatGeek's website on September 12, 2023, Plaintiff Grant purchased a ticket on October 21, 2023, Plaintiff Biederman purchased a ticket on January 28, 2024, and Plaintiff Zajac purchased a ticket on October 25, 2023. *Id.*

### B.      Plaintiffs' Allegations Regarding SeatGeek's Disclosures

In the FAC, Plaintiffs allege that SeatGeek "has been improperly charging consumers" because certain transaction fees are not shown in the "initially quoted fee." *Id.* ¶¶ 1–8. But the Complaint itself shows that SeatGeek expressly disclosed the amount of fees to Plaintiffs multiple times prior to their purchases. *Id.* ¶¶ 8–12; *see also* Giuliani Decl. ¶¶ 10–13; Exs. E–G. Based on these allegations, Plaintiffs assert claims under New York's All-in Pricing law and for unjust enrichment under New York common law. FAC ¶¶ 55–71.

Plaintiffs bring these claims individually and on behalf of a putative class. *Id.* ¶ 42. Plaintiffs seek, among other things, injunctive relief and "to recover actual damages or fifty dollars, whichever is greater." *Id.* ¶ 66.

### C.    The NAM Plaintiffs Were Required to Accept SeatGeek's Terms of Use Before Using the SeatGeek Website

Prior to purchasing tickets on SeatGeek's website, the NAM Plaintiffs each agreed to SeatGeek's TOU.  *See* Ex. C § 14; Giuliani Decl. ¶¶ 19, 23–25.  Indeed, ***all*** users on SeatGeek's website must agree to SeatGeek's TOU when making a purchase.  Giuliani Decl. ¶¶ 10–13.

The NAM Plaintiffs each clicked a button to complete their purchases, and text directly above that button advised them that clicking would bind them to SeatGeek's TOU.  *Id.*  Specifically, the text prominently notified each NAM Plaintiff of the following, or something materially the same:  "By clicking the button below to make a purchase, you are agreeing to our Terms of Use and acknowledging you have read our Privacy Notice."  Ex. G; Giuliani Decl. ¶ 12.  SeatGeek's TOU were hyperlinked at "Terms of Use."  Ex. G; Giuliani Decl. ¶ 12.



Importantly, prior to the accrual of any of the NAM Plaintiffs' claims, the TOU has contained a mandatory arbitration clause and class action waiver, and this purchase flow has remained the same or is substantially similar to the image above.  Giuliani Decl. ¶¶ 10, 19–20.[3]

---

[3] As explained in the Giuliani Declaration, the first paragraph in the image above reflects the notice between October 2023 to the present.  Giuliani Decl. ¶¶ 12 & n.2.  Prior to October 2023, the language of this first paragraph was materially the same and read:  "By purchasing a ticket, you agree to have an account with SeatGeek and be bound to the Terms of Use and Privacy Policy."  *Id.*

  **D.**  **SeatGeek's Terms of Use Contain a Broad Arbitration Provision and Class Action Waiver that Governs the NAM Plaintiffs' Claims**

    **1.**  *The NAM Plaintiffs Each Accepted SeatGeek's TOU Prior to Making a Purchase on SeatGeek's Website*

Plaintiffs Grant and Biederman each click-accepted the September 26, 2023 TOU ("September 2023 TOU") in the manner described above when purchasing tickets on SeatGeek's website on October 21, 2023 and January 28, 2024 respectively.  The September 2023 TOU, in relevant part, provides as follows:

> **14.4 <u>Applicability of Arbitration Agreement.</u>** Except as specifically stated in this Section, any dispute, claim, or controversy between you and SeatGeek . . . arising out of, relating in any way to, or in connection with the Terms, the SeatGeek website, Application or Services or your use of the SeatGeek website, Application or Services, your personal information, or any aspect of your relationship with SeatGeek, . . . shall be resolved exclusively by final, binding arbitration . . .

> **14.13 <u>Class Action Waiver.</u> YOU AND SEATGEEK FURTHER AGREE THAT, EXCEPT AS SPECIFIED ABOVE IN CONNECTION WITH THE BATCHING PROCESS, EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS.**

Ex. C §§ 14.4, 14.13.

Plaintiff Vassell click-accepted an earlier version of the TOU in the manner described above when purchasing tickets on SeatGeek's website on September 12, 2023.  That version, dated July 1, 2023, also includes a mandatory arbitration clause which provides as follows:  "Except as specifically stated in this 'Dispute Resolution' Section, any dispute, claim or controversy between you and SeatGeek . . . arising out of, relating in any way to, or in connection with the Terms and Conditions, . . . shall be resolved exclusively by final, binding arbitration . . . "  Ex. B § 14.1 ("July 2023 TOU").  The July 2023 TOU also contains a class action waiver, establishing that:  "All claims and disputes within the scope of this Dispute Agreement must be arbitrated on an individual basis and not on a class or collective basis."  *Id.* § 14.2.

Additionally, Plaintiff Vassell **also** accepted the September 2023 TOU. Based on SeatGeek's records, Plaintiff Vassell received notice of the September 2023 TOU on September 26, 2023. Giuliani Decl. ¶ 24. SeatGeek's records further show that the email address associated with Plaintiff Vassell's account opened the email containing SeatGeek's notification of the new September 2023 TOU. *Id.* Finally, Plaintiff Vassell's acceptance of the September 2023 TOU is also confirmed by language within the July 2023 TOU which states:

> PLEASE NOTE THAT THE TERMS ARE SUBJECT TO CHANGE BY SEATGEEK IN ITS SOLE DISCRETION AT ANY TIME. If you do not agree to any change(s) after receiving a notice of such change(s), you shall stop using the Digital Properties and/or the Services. Otherwise, your continued use of the Digital Properties and/or Services constitutes your acceptance of such change(s). PLEASE REGULARLY CHECK THE WEBSITE TO VIEW THE THEN-CURRENT TERMS.

Ex. B (preamble).

### 2. *Plaintiffs Grant and Vassell Also Previously Accepted the TOU When Creating SeatGeek Accounts*

Notably, these were not the only instances in which Plaintiffs Grant and Vassell accepted SeatGeek's TOU and agreed to arbitrate their claims and waive their right to pursue classwide claims. SeatGeek users cannot create a SeatGeek account without accepting SeatGeek's TOU. Between 2018 to the present, users encountered an account sign-up flow that remained materially the same and would have contained the following disclosure, or language substantially similar: "By clicking the 'Sign up' button below, you are agreeing to our Terms of Use, opening an account with SeatGeek, and acknowledging you have read our Privacy Notice." Ex. H; Giuliani Decl. ¶¶ 14–15. SeatGeek's TOU are hyperlinked at "Terms of Use." Ex. H; Giuliani Decl. ¶ 15.

Ex. H; Giuliani Decl. ¶ 15.[4]

Vassell created an account on September 15, 2021 and agreed to the July 19, 2021 TOU ("July 2021 TOU"), which provides that, aside from certain specified exceptions, "You agree that any dispute or claim relating in any way to your access or use of the Digital Properties, to any products sold or distributed through the Digital Properties, or to any aspect of your relationship with SeatGeek, will be resolved by binding arbitration, rather than in court."  Ex. A § 14.1.  The July 2021 TOU also included a class action waiver:  "ALL CLAIMS AND DISPUTES WITHIN

---

[4] As explained in the Giuliani Declaration, SeatGeek's account sign-up page has remained materially the same since 2018.  Giuliani Decl. ¶ 14.  The image above depicts the notice language that was in place since approximately September 2023 to the present.  *Id.* ¶¶ 14, 18 & n.3.  From 2018 to approximately September 2023, the notice appeared below the sign up button and read: "By using this website, by purchasing a ticket or by creating an account you agree to the terms of use and the privacy policy."  *Id.* ¶ 18 & n.3.

THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS OR COLLECTIVE BASIS . . ." *Id.* § 14.5.

Likewise, Plaintiff Grant created a SeatGeek account on October 21, 2023, and agreed to the September 2023 TOU, which contained the arbitration agreement and class action waiver quoted above.  Accordingly, the NAM Plaintiffs repeatedly agreed to arbitrate any claims against SeatGeek rather than pursue a class action.

**E.    Plaintiffs Amended Their Complaint After Providing Notice of Intent to Arbitrate**

Pursuant to the terms of the TOU, which requires notice prior to initiation of arbitration, Plaintiffs and putative class members sent two pre-arbitration notice and demand letters—first on January 18, 2024, and a supplemental letter on April 3, 2024.  *See* Declaration of Aarti Reddy ¶¶ 4–5; *see also* Ex. C § 14.2.  Notwithstanding this correspondence, Plaintiffs have continued to oppose SeatGeek's motion to compel arbitration and sought to pursue their claims in federal court. *See* ECF Nos. 13, 16.

## ARGUMENT

**A.    The Court Should Compel the NAM Plaintiffs to Arbitrate Their Claims**

**1.    *Legal Standards***

The TOU provide that the Federal Arbitration Act ("FAA") governs the interpretation and enforcement of arbitration proceedings under its terms.  *See, e.g.*, Ex. C § 14.5.  The FAA embodies "the liberal federal policy favoring arbitration agreements," requiring courts to enforce agreements "according to their terms."  *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2015).  The FAA establishes the need for courts "to respect and enforce the parties' chosen arbitration procedures."  *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018).  Any "ambiguities as to the scope of the arbitration clause itself" must be "resolved in favor of arbitration."  *Volt Info.*

*Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989).  In enforcing

an arbitration clause, courts determine "(1) whether the parties have entered into a valid agreement

to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration

agreement."  *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128.

    The standard on a motion to compel arbitration is "similar to that applicable for a motion

for summary judgment."  *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir.

2022).  Thus, courts can "consider materials outside the Complaint."  *Favors v. Triangle Servs.,*

*Inc.*, 207 F. Supp. 3d 197, 200 (E.D.N.Y. 2016).  After a moving party shows that "an agreement

to arbitrate existed," "the burden shifts to the party seeking to avoid arbitration to show the

agreement to be inapplicable or invalid."  *Zachman*, 49 F.4th at 102.

    **2.**    ***The NAM Plaintiffs Each Entered Into a Contract with Binding***
          ***Arbitration and Class Action Waiver Provisions***

    The NAM Plaintiffs are contractually prohibited from bringing this putative class action.

As set forth below, each NAM Plaintiff entered into a valid and binding agreement to arbitrate

their claims and waive any right to pursue class action claims.  And each of them had sufficient

notice of the TOU and assented to the TOU when purchasing tickets on SeatGeek's website.

    In deciding whether parties formed a valid contract, "courts should generally apply state-

law principles that govern the formation of contracts."  *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d

95, 103 (E.D.N.Y. 2015).  Because the TOU contains a New York choice-of-law provision, New

York law governs enforceability of its terms.  *See, e.g.*, Ex. C § 15.7.[5]  Under New York law,

"[m]utual assent may be manifested by word, act, or conduct which evinces the intention of the

---

[5] Courts within this circuit recognize that New York law is essentially the same as California law
with respect to whether a party has validly entered into an agreement.  *See, e.g.*, *Meyer v. Uber
Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) ("New York and California apply substantially similar
rules for determining whether the parties have mutually assented to a contract term.").

parties to contract." *Lewis v. Samsung Elecs. Am., Inc.*, 2023 WL 7623670, at *5 (S.D.N.Y. Nov. 14, 2023).

   ***Each NAM Plaintiff Agreed to the TOU Upon Making a Purchase.***   SeatGeek's TOU is presented to users in a manner that is commonplace for online agreements, where users manifest their acceptance of a contract by clicking to accept terms of use.   Courts routinely recognize clicking to accept as a valid means of entering into a binding agreement.   *See, e.g.*, *id.* at *7–8 (compelling arbitration based on click-wrap agreement, observing that "[c]ourts applying New York law routinely enforce clickwrap agreements so long as the agreement's terms and conditions are reasonably conspicuous") (cleaned up); *see also Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 454 (E.D.N.Y. 2019) (enforcing arbitration clause based on users clicking to make a purchase and accept terms).

   In assessing enforceability of online agreements, courts examine if a website's layout and text provide "reasonably conspicuous" notice of the terms of use, and if "[a] reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink."   *Meyer*, 868 F.3d at 75, 79.   This is an objective standard.   It is not based on a user "who has 'never before encountered' a smartphone app or entered into an online contract," but rather a "reasonably prudent user" who has "some familiarity with how to navigate to a website or download an app."   *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703–04 (2d Cir. 2023) (quoting *Meyer*, 868 F.3d at 77).   This is also not a bright-line test.   Rather, courts consider the totality of the circumstances.   *See id.* at 707 (observing "there are infinite ways to design a website or smartphone application," and "there are no particular features that must be present to satisfy the reasonably conspicuous standard").

Although there is no one way of meeting this standard, courts have routinely found reasonably conspicuous notice and sufficient manifestation of assent in circumstances comparable to those presented here. For example, in *Klarna*, the Second Circuit enforced an arbitration clause where the terms of use were presented in a: (1) layout that was "uncluttered[,]" including because there was only "one link to the terms"; (2) where all content was "visible at once"; and (3) where users faced "only one button to click" to complete their purchases. *Id.* at 705–06. The plaintiff in *Klarna* also manifested assent to the terms by clicking "Confirm and continue[,]" where directly above was the phrase "I agree to the payment terms." *Id.* at 708.

Additionally, a court just recently compelled arbitration in a copycat case relating to New York's All-in Pricing law. *See Teta v. Go N.Y. Tours, Inc.*, 2024 WL 3252907, at *3–5 (S.D.N.Y. July 1, 2024). In mandating arbitration, the court emphasized that the terms of use "were hyperlinked, as indicated by their blue text," and that the beginning of the terms disclosed the arbitration clause. *Id.* at *4. The *Teta* plaintiffs also manifested their assent to the terms by clicking on a button "next to a legible line of text which read[] 'I have read and agree to eventcruisenyc.com terms and conditions.'" *Id.* at *1, *4; *see also Meyer*, 868 F.3d at 78 (compelling arbitration where, among other things, text containing a hyperlink to terms of use was "directly below the buttons for registration" and users could see the notice of the terms without scrolling); *see also Peiran Zheng v. Live Auctioneers LLC*, 2021 WL 2043562, at *5 (S.D.N.Y. May 21, 2021) (enforcing arbitration clause and concluding the plaintiff agreed to the terms, emphasizing that "[t]he 'AGREE' button was a distinctive orange color" and the terms of use were "capitalized, blue, and underlined" indicating that they were hyperlinked).

Consistent with these authorities, SeatGeek's presentation of its TOU easily meets this objective, totality of the circumstances test. As explained above, before purchasing their tickets

on SeatGeek's website, each NAM Plaintiff clicked a button to complete the transaction. Text directly above that button contained a hyperlink to SeatGeek's TOU notifying them that clicking would bind them to that agreement. Giuliani Decl. ¶¶ 10–13; Ex. G.

As shown in the screenshot above, *see supra* Part II.C, SeatGeek presented to the NAM Plaintiffs an uncluttered layout containing a hyperlink to the SeatGeek TOU, which was immediately visible and did not require any scrolling. Ex. G; Giuliani Decl. ¶ 12. The language of that text is unambiguous:  it expressly states that "[b]y clicking the button below to make a purchase, you are agreeing to our Terms of Use." Ex. G. Further, the text appeared in grey font distinct from the bright white background, and in a standalone paragraph directly above the "Place order" button. *Id.* "Terms of Use" is underlined, signaling that the terms are hyperlinked. *Id.*[6]

This interface offers reasonably conspicuous notice of the TOU and any reasonable user would have understood that by clicking "Place order" they were agreeing to SeatGeek's TOU. *See, e.g.*, *Garcia v. Nabfly, Inc.*, 2024 WL 1795395, at *5–7 (S.D.N.Y. Apr. 24, 2024) (enforcing arbitration clause because the plaintiff accepted terms of use during the payment process, where "See full terms here" was "in black text on a white background" and located directly above a box that read "I agree – Let's do this"); *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *3, *5, *9 (S.D.N.Y. Nov. 20, 20217), *report and recommendation adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) (enforcing arbitration agreement where plaintiff clicked the "Submit Order" button, and just below was text hyperlinking the terms of use and stating that "[b]y making this purchase you are agreeing to our Terms of Use and Privacy

---

[6] The TOU are also hyperlinked once more at the bottom of the screen, with text stating "Terms." Giuliani Decl. ¶ 13.

Policy"); *Worthington v. JetSmarter, Inc.*, 2019 WL 4933635, at *2, *5, *9 (S.D.N.Y. Oct. 7, 2019) (similar).

**Plaintiff Vassell Agreed to the September 2023 TOU Via Email Update.**  Plaintiff Vassell agreed to an arbitration provision and class action waiver in the July 2023 TOU in the manner described above.  Additionally, Plaintiff Vassell agreed to the September 2023 TOU via an email notifying him of the update, which SeatGeek's records show he opened.  *See* Giuliani Decl. ¶ 24; *Cf. Starkey v. G Adventures, Inc.*, 796 F.3d 193, 197 (2d Cir. 2015) (holding that email notice that contained link to relevant terms was sufficient to bind plaintiff to those terms).  Plaintiff Vassell's acceptance of the September 2023 TOU is only reinforced by his express agreement to the July 2023 TOU, which he accepted when making a ticket purchase on September 12, 2023.  That September 12 acceptance also bound him to the later TOU, by providing that:  "THE TERMS ARE SUBJECT TO CHANGE BY SEATGEEK IN ITS SOLE DISCRETION AT ANY TIME," and "your continued use of the Digital Properties and/or Services constitutes your acceptance of such change(s)."  Ex. B (preamble); *see also supra* Part II.D.1.

**Plaintiffs Vassell and Grant Also Accepted the TOU During Account Creation.**  In addition to accepting SeatGeek's TOU when making purchases on SeatGeek's website, Plaintiffs Vassell and Grant **also** accepted SeatGeek's TOU when signing up for SeatGeek accounts.  Giuliani Decl. ¶¶ 14–18; Ex. H.  As shown above, in an uncluttered interface, SeatGeek informed Plaintiffs Vassell and Grant that "By clicking the 'Sign up' button below, you are agreeing to our Terms of Use, opening an account with SeatGeek, and acknowledging you have read our Privacy Notice."  *See* Ex. H; Giuliani Decl. ¶¶ 15–18; *see supra* Part II.D.2.

Thus, Plaintiffs Vassell and Grant manifested their express assent to SeatGeek's TOU **at least twice**—*i.e.*, during account creation and at the time of purchase.  Giuliani Decl. ¶¶ 15–19,

23–24.  Courts routinely compel arbitration in similar circumstances.  *See, e.g.*, *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 831–33 (S.D.N.Y. 2020) (granting motion to compel arbitration because the notice and hyperlinks "contrast against the white background" and "appear[] directly above the sign-up options," and "the notice appears at the time of account creation"); *Flores v. Chime Fin., Inc.*, 2022 WL 873252, at *1, *5 (S.D.N.Y. Mar. 23, 2022) (similar); *Salameno v. Gogo Inc.*, 2016 WL 4005783, at *3, *5 (E.D.N.Y. July 25, 2016) (enforcing arbitration agreement, in part because "plaintiffs were presented with a webpage that required them to click a button near the statement 'By clicking this button, you agree to Gogo's privacy & cookie policy and terms of use,'" and "[t]he 'terms of use' were hyperlinked"); *Aminoff & Co. LLC v. Parcel Pro, Inc.*, 2022 WL 987665, at *4–5, *9 (S.D.N.Y. Apr. 1, 2022) (compelling arbitration where "the T&Cs and Privacy Policy appear in hyperlinked bolded green text and requires registrants to check a box indicating their assent before submitting the application").

Accordingly, the NAM Plaintiffs each entered into a valid agreement to arbitrate and waive their class action claims.  Giuliani Decl. ¶¶ 15–19, 23–24.

### 3. *The Arbitration Clause and Class Action Waiver Preclude the NAM Plaintiffs' Claims*

The arbitration clause and class action waiver are enforceable and bar the NAM Plaintiffs from bringing a putative class action in this Court.

#### a. *The Court Should Enforce SeatGeek's Arbitration Clause*

SeatGeek's arbitration clause is enforceable because its expansive language plainly encompasses the NAM Plaintiffs' claims.

Valid agreements to arbitrate are enforceable, where "the dispute at issue comes within the scope of the arbitration agreement."  *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d at 128. Further, an arbitration clause is broad where, as here, it "purports to refer to arbitration all disputes

arising out of a contract." *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 113 (2d Cir. 2023).  A broad arbitration clause enjoys a "presumption of arbitrability," especially if there is any ambiguity, and any "[d]oubts should be resolved in favor of coverage." *Id.* at 114.

Applying these standards here, the NAM Plaintiffs' claims should be easily compelled to arbitration.  Their claims arise "[w]hen ticket purchasers visit Defendant's website."  FAC ¶ 2; *see also id.* ¶¶ 8–12 (alleging Plaintiffs' ticket purchases); *see id.* ¶ 42 (purporting to represent a class that includes"[a]ll New York residents who purchased tickets through Defendant's website to a New York event based on the effective date of the statute").  Further, the NAM Plaintiffs' theory of liability is that SeatGeek "systematically and intentionally misrepresents what Defendant will ultimately charge consumers" by "listing [a] ticket price without disclosing the true overall cost." *Id.* ¶¶ 27, 30.  Plaintiffs' claims and allegations plainly fall within the ambit of the TOU's arbitration clause, because they "aris[e] out of, relat[e] in any way to, or in connection with" the SeatGeek website, the "Services," the NAM Plaintiffs' "use of the SeatGeek website," "or any aspect of [the NAM Plaintiffs'] relationship with SeatGeek."  Ex. C § 14.4.[7]

Given the language that the NAM Plaintiffs agreed to, they cannot reasonably dispute application of the arbitration provision here.  *See, e.g.*, *Teta*, 2024 WL 3252907, at *4 (concluding All-in Pricing law claims fell within the ambit of an arbitration clause encompassing "any dispute arising out of or related to these Terms and Conditions or the *Services* offered"); *Wayfair Inc.*, 410

---

[7] Plaintiff Vassell also agreed to the July 2023 TOU, which contains an arbitration agreement and class action waiver that similarly encompasses disputes "arising out of, relating in any way to, or in connection with the Terms and Conditions."  Ex. B § 14.1.

F. Supp. 3d at 452, 454 (enforcing arbitration clause because it covered disputes "arising from or relating to . . . the relationships which result from these Terms of Use").[8]

### b.    The Court Should Delegate Questions of Arbitrability to the Arbitrator

In any event, should the Court at all question the scope of the arbitration clause, the TOU provides that this issue should be delegated to an arbitrator.  *See, e.g.*, Ex. C § 14.11; *see Maldonado v. Nat'l Football League*, 2023 WL 4580417, at *5 (S.D.N.Y. July 18, 2023) (concluding arbitration clause's broad coverage and incorporation of commercial arbitration rules show the parties' intent "to have the arbitrator decide whether any disputes are covered by the" arbitration clause); *Thorne v. Square, Inc.*, 2022 WL 542383, at *13 (E.D.N.Y. Feb. 23, 2022) (delegating to arbitrator whether claims had to be resolved in arbitration, because plaintiffs alleged harm from unauthorized transactions on defendants' mobile payments platform and the delegation clause encompassed "any claim, controversy, or dispute between you and Square, . . . including any claims relating in any way to these Terms or the Services, or any other aspect of our relationship"); *Worthington*, 2019 WL 4933635, at *6–7 (similar).

Thus, the NAM Plaintiffs cannot dodge the arbitration clause and litigate in this Court.

---

[8] Courts enforce arbitration agreements even under circumstances where the alleged violation occurred mere moments before a plaintiff accepted terms of use.  *See Teta*, 2024 WL 3252907, at *3–5.  As an initial matter, Plaintiffs Vassell and Grant agreed to the TOU when signing up for an account prior to their challenged transactions.  *See supra* Part II.D.2.  Plaintiff Biederman fares no better because "[c]ourts generally give retroactive application to broad arbitration clauses," such as that here.  *See, e.g.*, *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 551 (S.D.N.Y. 2018) (emphasis in original) (concluding arbitration clause applied retroactively because it applied to "*any dispute, claim or controversy* arising out of or relating to these Terms"); *see also Sacchi v. Verizon Online LLC*, 2015 WL 765940, at *9 (S.D.N.Y. Feb. 23, 2015) (finding arbitration clause applied retroactively as governing "any dispute that in any way relates to or arises out of this agreement," "with no temporal limitation").

### c.    The Court Should Enforce SeatGeek's Class Action Waiver

Not only are the NAM Plaintiffs barred from litigating in Court, but the TOU's class action waiver bars the NAM Plaintiffs from bringing a class action.  Plaintiffs expressly waived the ability to bring a class action.

> **14.13** <u>**Class Action Waiver.**</u> **YOU AND SEATGEEK FURTHER AGREE THAT, EXCEPT AS SPECIFIED ABOVE IN CONNECTION WITH THE BATCHING PROCESS, EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS.[9]**

Ex. C § 14.13.

The FAA permits enforcement of class action waivers, and courts in this district routinely enforce such provisions.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 352 (2011) (concluding the FAA permits class action waivers).  New York law likewise allows enforcement of class action waivers.  *Tsadilas v. Providian Nat. Bank*, 13 A.D.3d 190, 191 (1st Dep't 2004) (enforcing class action waiver because, "[u]nder New York law, a contractual proscription against class actions . . . is neither unconscionable nor violative of public policy"); *see also Castro v. TCA Logistics Corp.*, 2021 WL 7287305, at *6–7 (E.D.N.Y. Mar. 31, 2021) (enforcing class action waiver under New York law); *see also Vitrano v. N.A.R., Inc.*, 2020 WL 1493620, at *9 (E.D.N.Y. Mar. 27, 2020) (same).  Thus, the NAM Plaintiffs cannot bring a putative class action.

### B.    The Court Should Dismiss the FAC Under Rule 12(b)(1)

In the alternative, even if the Court refuses to compel the NAM Plaintiffs to arbitration, all of Plaintiffs' claims should be dismissed for lack of Article III standing.[10]  The federal judiciary is

---

[9] Plaintiff Vassell also click-accepted a broad class action waiver, as shown in the July 2023 TOU. *See* Ex. B § 14.2; *see also supra* Part II.D.1.

[10] As noted above, since Plaintiff Zajac appears to have opted out of the TOU's arbitration provision, SeatGeek does not seek to compel his claims to arbitration.  His claims, however, still fail under Rules 12(b)(1) and 12(b)(6).

limited to adjudicating "actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). To effectuate this jurisdictional limitation, courts apply the doctrine of standing. *Id.* at 338. Article III standing requires plaintiffs to adequately allege that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* A plaintiff "bears the burden of establishing these elements," and at the pleading stage, "must clearly . . . allege facts demonstrating each element." *Id.*

### 1.    *Plaintiffs Lack Article III Standing to Pursue Damages Because They Have Not Shown Any Concrete Injury*

The Supreme Court has made a clear pronouncement: "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). A concrete harm is one that is "real, and not abstract." *Spokeo*, 578 U.S. at 340. In other words, "it must actually exist." *Id.* A plaintiff's burden to show a concrete harm does not relent based on an alleged statutory violation. *TransUnion LLC*, 594 U.S. at 426–27. Rather, it is axiomatic that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 426. This principle acknowledges the "important difference" between, on the one hand, plaintiffs' "statutory cause of action to sue a defendant over the defendant's violation of federal law"; and, on the other, plaintiffs "suffering concrete harm because of the defendant's violation of federal law." *Id.* at 426–27.

Courts have repeatedly recognized this distinction in dismissing cases for lack of standing. For example, in *TransUnion*, plaintiffs alleged violations of the Fair Credit Reporting Act, asserting that the defendant failed to implement "reasonable procedures to ensure the accuracy of credit files so that the files would not include OFAC alerts labeling the plaintiffs as potential terrorists." *Id.* at 417, 430. But a group of these plaintiffs had inaccurate, internal credit files that never led to anything more, such as dissemination to third parties or denials of requests for credit.

*Id.* at 437.  Because "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm," these plaintiffs lacked standing.  *Id.* at 434, 442; *see also Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) (affirming dismissal for lack of standing, because plaintiff failed to allege that purported violations of the Americans with Disabilities Act impeded "his ability to travel" in any way); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64–66 (2d Cir. 2021) (affirming dismissal for lack of standing because plaintiffs failed to show any concrete harm from bank's alleged violation of statute requiring the filing of a mortgage satisfaction within a specified time after full payment of the mortgage).

Consistent with *TransUnion* and its progeny, this action should be dismissed because Plaintiffs do not allege any injury beyond a bare statutory violation.

Here, as an initial matter, Plaintiffs do not allege any economic injury—*e.g.*, that any law exempted them from having to pay the challenged fee, that they purchased tickets without full knowledge of the challenged fee, or that their tickets were available elsewhere for a lower price. Indeed, Section 25.29(1) of the New York Arts & Cultural Affairs Law specifically addresses the legality of service charges and fees and the FAC conspicuously omits any mention of this provision.  *See* N.Y. ARTS & CULT. AFF. LAW § 25.29(1) (generally prohibiting "any premium or price in excess of the established price plus lawful taxes whether designated as price," while establishing specific exceptions for service charges and fees).  Nor could they: as shown in Plaintiffs' own Complaint, the challenged fees were plainly disclosed to each of the Plaintiffs early in their transactions ***before the final purchase screen***.  Plaintiffs' depiction of the transaction process clearly shows that SeatGeek disclosed the amount it charged for fees multiple times and that this disclosure remained constant prior to and through Plaintiffs' ticket purchases.  *See* FAC

¶¶ 23–24.[11]  The Complaint also conspicuously omits the final checkout page, where Plaintiffs see the fees once more and agree to SeatGeek's TOU.  *See supra* Part II.C; Giuliani Decl. ¶ 15.

Stripped to their core, Plaintiffs' allegations do not suffice.  **First**, Plaintiffs allege that SeatGeek committed a technical violation of New York's All-in Pricing law—*i.e.*, because SeatGeek allegedly "fail[ed] to disclose the total cost of a ticket . . . after a ticket is selected" and that SeatGeek charges for fees "increas[ed] the total cost of tickets during the purchase process." FAC ¶¶ 59–60.  But because Plaintiffs fail to identify any concrete harm that flows from that alleged violation, their claims fail under *TransUnion*.

**Second**, Plaintiffs likewise fail to allege informational injury based on SeatGeek's "failure to disclose the total cost of a ticket, inclusive of all ancillary fees," and "to disclose in a clear and conspicuous manner the portion of the ticket price . . . that represents a service charge." *Id.* ¶¶ 59, 61.  To plausibly plead standing based on informational injury, plaintiffs must allege they have not "obtain[ed] information which must be publicly disclosed pursuant to a statute." *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998).  Critically, Plaintiffs also must plead "downstream consequences from failing to receive the required information," and as discussed above, they have not done so.  *TransUnion LLC*, 594 U.S. at 442.

**Lastly**, Plaintiff should find no solace in the lone decision addressing New York's All-In Pricing law and concluding that a plaintiff adequately alleged Article III standing.[12]  Unlike in

---

[11] Before SeatGeek users even select a ticket at all, SeatGeek gives users the option to see total prices that include fees.  *See* FAC ¶ 21.  Plaintiffs seek to obscure this fact by gerrymandering the images in their complaint, apparently having selected an option to exclude fees from their view of total prices.  *See* FAC ¶¶ 21, 23; *see also* Giuliani Decl. ¶ 11.

[12] The court in *Patterson v. Wildlife Conservation Society*, Case No. 1:24-cv-00171-JMF (S.D.N.Y. May 22, 2024) also denied a defendant's motion to dismiss relating to the All-in Pricing law, but has not issued a written opinion.  In any event, the transaction flow at issue in *Patterson* is also distinguishable from that at issue in this case.  For example, in *Patterson*, fees were only disclosed at the final checkout page, whereas SeatGeek disclosed fees multiple times prior to

*Charles v. Color Factory, LLC*, 2024 WL 1693236, *1, *3 (S.D.N.Y. Apr. 19, 2024), Plaintiffs here admit that SeatGeek ***has*** disclosed the precise amount of fees multiple times prior to check out, and not grouped fees and taxes together such that Plaintiffs do not know the cost of each.  FAC ¶¶ 23–24.  In *Charles*, the challenged fee was disclosed for the first time in the final checkout page with fees and taxes grouped together along with an 8-minute countdown that purportedly applied pressure to complete the purchase.  2024 WL 1693236, at *1.  These facts are simply nothing like the present action, in which SeatGeek discloses fees multiple times before the final checkout page without the use of a countdown timer.  *See* FAC ¶¶ 23–24.

### 2.  *Plaintiffs Lack Standing to Pursue Injunctive Relief*

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *TransUnion LLC*, 594 U.S. at 436.  To secure injunctive relief, "a plaintiff cannot rely on past injury . . . but must show a likelihood that he . . . will be injured in the future."  *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020).  "There is no exception to demonstrating future injury when the plaintiff is pursuing a class action." *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016).

Plaintiffs do not allege that they will purchase tickets on SeatGeek's website in the future. Even if they had, Plaintiffs do not (and could not) plausibly plead any risk of a purported similar injury going forward.  On the contrary, Plaintiffs' allegations show that they are fully aware of the disclosures of ticket charges and fees.  Thus, the Court should dismiss Plaintiffs' request for injunctive relief.  *See, e.g.*, *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) (holding plaintiff lacked standing to pursue injunctive relief, concluding that, "[b]ecause a

---

checkout.  *Compare* Complaint ¶¶ 9–15, *Patterson*, Case No. 1:24-cv-00171-JMF, *with* FAC ¶¶ 23–24.

plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, there is no danger that they will again be deceived by them").

### C.    The Court Should Dismiss the Complaint Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts only credit allegations if they are "plausible" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Even though courts generally accept factual allegations and construe the pleadings in the light most favorable to plaintiffs, courts do not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### 1.    *The Voluntary Payment Doctrine Bars Plaintiffs' Claims*

Under New York law, "[t]he common-law voluntary payment doctrine bars recovery of payments made with full knowledge of the facts, even if made under a mistake of law." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 292 A.D.2d 25, 27–28 (2d Dep't 2002) (affirming grant of motion to dismiss under the voluntary payment doctrine, where plaintiff "was fully aware" that she would be charged fees for late payment of cable bills and the amount of the stated fee suggested that it "might be excessive").

Here, Plaintiffs concede that they had full knowledge of the alleged fees, long before they completed the purchase process. *See* FAC ¶¶ 23–24. As the Complaint itself acknowledges, SeatGeek disclosed the precise amount of fees to Plaintiffs numerous times before Plaintiffs completed the purchase process. *Id.* Plaintiffs still proceeded to purchase the tickets, despite having knowledge of the exact amount of fees. *Id.*; *see also id.* ¶¶ 8–11. That makes this case different from *Charles v. Color Factory, LLC* (*see supra* Part III.B.1), because Plaintiffs do not allege that SeatGeek has grouped ticket prices and fees even at the final checkout page. *See* FAC

¶¶ 23–24.  This only reinforces that Plaintiffs here do not plausibly allege that they lacked knowledge of any relevant facts or faced duress.  The voluntary payment doctrine therefore bars Plaintiffs' claims.  *See, e.g.*, *Shelton v. CIOX Health, LLC*, 2018 WL 4211447, at *4 (E.D.N.Y. July 20, 2018) (dismissing complaint, where plaintiff paid fee for medical records without duress, knowing the fee exceeded the statutory cap).

### 2.    *Plaintiffs' Claims for Unjust Enrichment Fail for Additional Reasons*

Plaintiffs' claims for unjust enrichment fail for two independent reasons: (1) they are duplicative of Plaintiffs' claims under the All-In Pricing law, and (2) a contract governs their dispute with SeatGeek.  An unjust enrichment claim requires a plaintiff to plead that a defendant "obtained a benefit which in equity and good conscience should be paid to the plaintiff."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  But an unjust enrichment claim "is not a catchall cause of action to be used when others fail."  *Id*.  Instead, "[i]t is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Id*.

These principles are dispositive of Plaintiffs' unjust enrichment claims, which are duplicative of Plaintiffs' claims under the All-in Pricing law.  Plaintiffs plead the exact same allegations for both their All-in Pricing law and unjust enrichment claims, and make no effort to distinguish between the allegations underlying these claims.  This alone warrants dismissal.  *See, e.g.*, *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150 (S.D.N.Y. 2023) (dismissing unjust enrichment claim as duplicative of statutory claim).

Additionally, Plaintiffs cannot plead unjust enrichment claims where a contract governs their dispute with SeatGeek.  The TOU govern Plaintiffs' dispute with SeatGeek, precluding Plaintiffs from bringing unjust enrichment claims.  *See, e.g.*, *111 W. 57th Inv. LLC v. 111 W57*

*Mezz Inv. LLC*, 220 A.D.3d 435, 437 (1st Dep't 2023) (dismissing unjust enrichment claim because "a written agreement govern[ed] the subject matter at issue").

For each of these reasons, the Court should dismiss Plaintiffs' unjust enrichment claims.

## **CONCLUSION**

The Court should grant SeatGeek's motion to compel arbitration, or in the alternative, motion to dismiss the Compliant.

Dated:  July 15, 2024                 By: _/s/ Christopher Andrews_
                                                Christopher Andrews (NY 5442355)
                                                Ian Shapiro (NY 4002408)
                                                COOLEY LLP
                                                55 Hudson Yards
                                                New York, NY 10001-2157
                                                Tel: (212) 479-6000
                                                ishapiro@cooley.com
                                                candrews@cooley.com

                                                Aarti Reddy (CA 274889) (*pro hac vice*)
                                                COOLEY LLP
                                                3 Embarcadero Center, 20th Floor
                                                San Francisco, CA 94111-4004
                                                Tel: (415) 693-2000
                                                areddy@cooley.com

                                                *Attorneys for Defendant SeatGeek, Inc.*