UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TORELL VASELL, SHANTEE GRANT, SEAN BIEDERMAN, ALEXANDER ZAJAC, and TODD CAREY *individually and on behalf of all others similarly situated*,

                    *Plaintiffs,*

        – against –

SEATGEEK, INC.,

                    *Defendant.*

**MEMORANDUM & ORDER**
24-cv-00932 (NCM) (JRC)

---

**NATASHA C. MERLE**, United States District Judge:

Defendant SeatGeek, Inc. ("SeatGeek") moves to compel arbitration or, alternatively, to dismiss plaintiffs' Amended Class Action Complaint (the "FAC") under Federal Rule of Civil Procedure 12(b)(1), for lack of standing, and under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. Def.'s Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 24-1 (the "Motion").[1] Upon consideration of the parties' written submissions, the Court hereby **GRANTS** defendant's Motion to Compel Arbitration and, with respect to plaintiff Zajac, **DENIES** the Motion to Dismiss.

## BACKGROUND

Defendant SeatGeek owns and operates a website, SeatGeek.com. FAC ¶ 13, ECF No. 13. Defendant charges online purchasers for tickets to live events such as concerts,

---

[1]      The Court hereinafter refers to plaintiff's Response in Opposition to defendant's Motion, ECF No. 25, as the "Opposition"; and the Reply Memorandum in Support of defendant's Motion, ECF No. 26, as the "Reply."

athletic events, and plays. FAC ¶¶ 2, 8, 10, 11, 12; Opp'n 10–11.[2] Users may purchase tickets via SeatGeek's website or through its mobile device application. Decl. of Paula Giuliani ¶ 4, ECF No. 24-3.

## I. The Website

Plaintiffs are four[3] individuals who purchased event tickets through SeatGeek's website. When the user purchases a ticket on SeatGeek's platform or signs up for a SeatGeek account, he or she must agree to the Terms of Use active at the time. Giuliani Decl. ¶¶ 7, 18.

*Option Page (Figure 1)*: When purchasing tickets on SeatGeek's website, a user first encounters a page (the "Option Page") listing available seats for a selected event. *See* FAC ¶ 21, Fig. 1. Among other things, this page quotes one price for each seat, displays the location of the seat, and calibrates the quality of the "[d]eal" for purchasing that seat. FAC ¶ 21, Fig. 1 (displaying three "Great Deal[s]").



*Figure 1: Option Page*

---

[2]     Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

[3]     Plaintiffs "elected to withdraw Plaintiff Carey's claim." Pl.'s Ltr. 1, ECF No. 16.

*Selection Page (Figure 2)*: Once a user selects a seat, they are taken to a second page (the "Selection Page") that lists a price, greater than the previously quoted price, for the seat they have selected. FAC ¶ 23, Fig. 2. The Selection Page discloses the inclusion of additional fees in this price. FAC ¶ 23, Fig. 2.



*Figure 2: Selection Page*

*Billing Information Page (Figure 3)*: If the user continues with the transaction, a third page prompts the user to input payment information (the "Billing Information Page"). FAC ¶ 24, Fig. 3. On the right side of this page, the price is broken down: the cost of the ticket itself, the ticket's attendant "Fees," and then a "Total" price combining the ticket cost and fees. FAC ¶ 24, Fig. 3.



*Figure 3: Billing Information Page*

If users decide to purchase the selected ticket at the Total price, they proceed to a final checkout page where they must "click a button" to place their order. Giuliani Decl. ¶ 12. Above the "Place order" button, SeatGeek informs users that by "clicking the button below to make a purchase," they agree to SeatGeek's "<u>Terms of Use</u>, and acknowledg[e they] have read [SeatGeek's] <u>Privacy Notice</u>." Giuliani Decl. ¶ 12.[4]

## II. The Terms of Use ("TOU")

At issue in this case is SeatGeek's Terms of Use agreement that was in effect beginning September 26, 2023.[5] ECF No. 24-6 (the "TOU").

---

[4] Defendant represents that, prior to October 2023, the language above the "Place order" button was "materially the same and read: 'By purchasing a ticket, you agree to have an account with SeatGeek and be bound to the <u>Terms of Use</u> and <u>Privacy Policy</u>.'" Giuliani Decl. ¶ 12 n.2.

[5] Plaintiff Edwards allegedly used SeatGeek's website to purchase tickets "on or around March 11, 2023." *See* Edwards Compl. ¶ 7, *Edwards v. SeatGeek, Inc.*, No. 24-cv-03288 (E.D.N.Y. May 2, 2024), ECF No. 1. The Court takes judicial notice that SeatGeek's TOU updated on March 3, 2023 (the "March 2023 TOU"), were in effect at this time. *Wells Fargo Bank v. Wrights Mill Holdings*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) ("[A] court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready

The TOU includes a "Dispute Resolution" section that features provisions regarding mandatory arbitration and class action waivers, as well as a preamble stating that the agreement's "TERMS ARE SUBJECT TO CHANGE BY SEATGEEK IN ITS SOLE DISCRETION AT ANY TIME." TOU 2. The TOU also states that, if the user does "not agree to any change(s)," they "shall stop using" SeatGeek's services and that continued use of SeatGeek's services "constitutes [the user's] acceptance of such change(s)." TOU 2 (hereinafter referred to as the "Continued Used Provision").

The mandatory arbitration provision is found in a subsection titled "Applicability of Arbitration Agreement." TOU 9 § 14.4. Specifically, the TOU states: "any dispute, claim, or controversy between you and SeatGeek . . . arising out of, relating in any way to, or in connection with the Terms, the SeatGeek website . . . or your use of the SeatGeek website . . . your personal information, or any aspect of your relationship with SeatGeek, including any dispute, claim, or controversy *that arose before you accepted these Terms*, regardless of whether prior versions thereof required arbitration . . . shall be resolved exclusively by final, binding arbitration . . . ." TOU 9 § 14.4 (emphasis added).

The TOU also includes a separate subsection on "Batch Arbitration," which stipulates that where "there are [100] or more individual arbitrations of a substantially similar nature filed against SeatGeek . . . within a [90] day period," National Arbitration

---

determination."). The Court examined the March 2023 TOU using the Internet Archive Wayback Machine (https://web.archive.org). *See* SeatGeek TOU Mar. 3, 2023, Internet Archive Wayback Machine, https://web.archive.org/web/20230315065258/https://seatgeek.com/terms [https://perma.cc/FUA7-VX5X] (last visited Jan. 17, 2025). *See also Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 581 n.5 (S.D.N.Y. 2021) (taking judicial notice of a former version of defendant's website, accessed via archive.org, at the motion to dismiss stage); *Thorne v. Square, Inc.*, No. 20-cv-05119, 2022 WL 542383, at *1 (E.D.N.Y. Feb. 23, 2022), *appeal withdrawn*, No. 22-542, 2022 WL 2068771 (2d Cir. Apr. 14, 2022) (taking judicial notice of archived website pages on motion to compel arbitration).

and Mediation shall administer arbitration in "batches of 100 claims per batch." TOU 10 § 14.7.

Finally, as relevant to this dispute, the TOU contains a "Class Action Waiver" subsection. *See* TOU 10 § 14.13. This condition specifies that SeatGeek and its users may only "BRING CLAIMS AGAINST THE OTHER" on an individual basis and "NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS," and that parties waive all rights to have any dispute brought, heard, administered, resolved, or arbitrated on a class basis. TOU 10 § 14.13.

### III.    The Plaintiffs

Plaintiffs in this action all transacted with SeatGeek at some point between September 2021 and January 2024. Plaintiffs Vasell,[6] Grant, and Biederman are heretofore referred to as the "Arbitration Plaintiffs" because they do not allege having opted out of any TOU-based arbitration agreement. Plaintiff Alexander Zajac purchased a ticket on SeatGeek's website and availed himself of SeatGeek's unilateral opt-out right. *See* Mot. 8 n.2. Neither party disputes that Zajac is "not bound to arbitrate." Reply 10. Consolidated plaintiff Edwards[7] nowhere alleges having exercised SeatGeek's unilateral

---

[6]    The pleadings and briefs in this case include multiple spellings of plaintiff Tor(r)ell Vas(s)ell's name. For purposes of this Motion, the Court adopts the spelling appearing on ECF: "Torell Vasell."

[7]    By court order, the putative class action *Edwards v. SeatGeek, Inc.* was consolidated with this action. *See* Consolidation Stipulation & Order, *Edwards v. SeatGeek, Inc.*, No. 24-cv-03288 (E.D.N.Y. Aug. 20, 2024), ECF No. 17. The Court subsequently so-ordered the parties' joint stipulation that Ashley Edwards, plaintiff in *Edwards*, would "join the *Vasell* plaintiffs for all purposes and . . . be bound by any ruling as to SeatGeek's Motion." *See* Briefing Stipulation & Order 2, ECF No. 23. As discussed *infra*, plaintiff Edwards is compelled to arbitrate her claims.

opt-out right and is thus assumed to have originally accepted the March 2023 TOU's arbitration provisions.

Additionally, all plaintiffs in this action purchased tickets on SeatGeek's website, and at least two plaintiffs signed up for a SeatGeek account. FAC ¶¶ 8–11. To purchase tickets on SeatGeek's website, each plaintiff selected the "Place order" button on the Billing Information page, which informed them that, in sum and substance, placing an order indicated agreement with SeatGeek's TOU. *See* Giuliani Decl. ¶¶ 12, 19, 23; Ex. G 2, ECF No. 24-10.

On September 15, 2021, plaintiff Vasell created a SeatGeek account. Giuliani Decl. ¶ 16. At that time, a Terms of Use dated July 2021 was in effect (the "July 2021 TOU"). Giuliani Decl. ¶ 16. On September 12, 2023, plaintiff Vasell purchased three tickets to see "Rod Wave with Ari Lennox, Toossi, and G Herbo" on SeatGeek for a total of $315.72—this total included three tickets priced at $74.00 each, and three ticket fees of $31.24 each. FAC ¶ 8. In placing his order, plaintiff Vasell accepted a Terms of Use dated July 1, 2023 (the "July 2023 TOU"). *See* Giuliani Decl. ¶ 23. On September 26, 2023, he received and opened email notice of the updated September 2023 TOU. Giuliani Decl. ¶ 24.

Plaintiff Grant created a SeatGeek account on October 21, 2023. Giuliani Decl. ¶ 17. At that time, the TOU was in effect. Giuliani Decl. ¶¶ 17, 22. On the same day, Grant purchased two tickets for "Blippi Live" on SeatGeek for a total of $191.74—the cost of two tickets priced at $68.00 each, with a fee of $27.87 per ticket. FAC ¶ 9. In placing her order, plaintiff Grant accepted the TOU. *See* Giuliani Decl. ¶ 19.

On January 28, 2024, plaintiff Biederman purchased two tickets to an NCAA basketball event on SeatGeek for a total of $210.72—the cost of two tickets priced at

$86.00 each, with a fee of $29.36 per ticket (less $20.00 in discounts). FAC ¶ 10. At the time of his purchase, the TOU was in effect. Giuliani Decl. ¶ 19. In placing his order, plaintiff Biederman accepted the TOU. *See* Giuliani Decl. ¶ 19.

On October 25, 2023, plaintiff Zajac purchased two tickets to "Cabaret at the Kit Kat Club" on SeatGeek for a total of $1,329.10—the cost of two tickets priced at $599.00 each, with a fee of $65.55 per ticket. FAC ¶ 11. At the time of his purchase, the TOU was in effect. Giuliani Decl. ¶ 19. In placing his order, plaintiff Zajac accepted the TOU. *See* Giuliani Decl. ¶ 19. Two days later, Zajac opted out of the TOU's arbitration clause. Giuliani Decl. ¶¶ 27–28; Mot. 8 n.2.

## IV.    Section 25.07

Plaintiffs argue that defendant's website violates New York Arts & Cultural Affairs Law § 25.07 ("Section 25.07") by both not providing the total price on the Selection Page and not clearly disclosing added fees on the final checkout page. FAC ¶¶ 63, 65. On August 29, 2022, the New York State legislature passed Section 25.07, mandating that any "platform that facilitates the sale or resale of tickets shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents . . . any [] fee or surcharge to the purchaser." N.Y. Arts & Cult. Aff. Law § 25.07(4). The "total cost and fees shall be displayed in the ticket listing prior to" the user selecting the ticket for purchase. *Id*. Section 25.33 of the same chapter provides plaintiffs a "[p]rivate right of action" to seek injunctive relief, actual or statutory damages, and fees for violations of Section 25.07. N.Y. Arts & Cult. Aff. Law § 25.33.

## MOTION TO COMPEL ARBITRATION

### I.    Legal Standard

Under Section 2 of the Federal Arbitration Act ("FAA"), arbitration agreements are generally "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act establishes "a liberal federal policy favoring arbitration agreements." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 120 (2019).[8] The FAA "leaves no place for the exercise of discretion by a district court," instead mandating "arbitration on issues as to which an arbitration agreement has been signed." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019).

In enforcing an arbitration clause, courts determine (1) "whether the parties have entered into a valid agreement to arbitrate, and, if so, [(2)] whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). The FAA requires courts to enforce arbitration agreements "according to their terms." *Id.* at 127. And any ambiguities as to the scope of the arbitration clause must be "resolved in favor of arbitration." *See Bechtel do Brasil Construcoes Ltda. v. UEG Araucaria Ltda.*, 638 F.3d 150, 155 (2d Cir. 2011) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

The standard of review for a motion to compel arbitration is "similar to that applicable for a motion for summary judgment." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022). As with a motion for summary judgment, the Court "considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[8]    Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

affidavits, and draws all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Techs, Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). If the undisputed factual record supports a legal determination as to arbitrability, the Court "may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund*, 661 F.3d 164, 172 (2d Cir. 2011). After the moving party shows that "an agreement to arbitrate existed," "the burden shifts to the party seeking to avoid arbitration to show the agreement to be inapplicable or invalid." *Zachman*, 49 F.4th at 102.

The Court "should generally rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss." *Kaiser v. StubHub, Inc.*, No. 24-cv-00044, 2024 WL 3445059, at *3 (S.D.N.Y. July 17, 2024) (quoting *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018)).

## II.    Discussion

This dispute primarily centers on the second step of Court's analysis. *See In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128 (describing two-step framework). The parties do not dispute that the TOU contains a valid arbitration agreement, and the Court discerns no reason to find otherwise. However, the parties raise several disputes as to the scope of that arbitration agreement: whether SeatGeek's TOU applies to statutory violations occurring before a user signs them; whether the arbitrability of plaintiffs' claims is a question for an arbitrator; whether the TOU is unconscionable and therefore unenforceable; and whether the TOU's class action waiver applies to the Arbitration Plaintiffs' claims.

For the reasons that follow, the Court finds (i) the arbitrability of the Arbitration Plaintiffs' claims is a question for the arbitrator given the TOU's broad delegation clause,

(ii) that the TOU applies retroactively, thus binding the Arbitration Plaintiffs, and (iii) plaintiffs' challenge to the conscionability of the TOU is a question for the arbitrator. As such, the motion to compel arbitration is granted as to the Arbitration Plaintiffs.

### A.  Applicable TOU

As an initial matter, the Court finds that the TOU applies to all of the Arbitration Plaintiffs' claims.

Plaintiff Vasell accepted a prior version of the TOU, the July 2023 TOU, when he used SeatGeek's website to purchase tickets to an event on September 12, 2023. FAC ¶ 8; Giuliani Decl. ¶ 23. Further, Vasell does not dispute, nor does any evidence refute, that he agreed to the TOU by opening SeatGeek's "Notice Email." *See* Reply 8; Ex. I 2, ECF No. 24-12. Specifically, it is undisputed that on September 26, 2023, Vasell opened the Notice Email, which informed him that SeatGeek had updated its TOU and that "[f]or existing SeatGeek users, like you, the effective date of these updated Terms begins on the date of your next purchase or sale on SeatGeek, *or on October 10, 2023, whichever comes first*." Giuliani Decl. ¶¶ 24–25 (emphasis added). Here, the record does not suggest that Vasell objected to the updated terms prior to October 10, 2023. Accordingly, the Court finds that Vasell accepted the terms of the TOU.

Plaintiff Grant accepted the TOU when she both signed up for a SeatGeek account and purchased tickets on the website on October 21, 2023. FAC ¶ 9. Plaintiff Biederman also agreed to the TOU when he purchased tickets on the SeatGeek website on January 28, 2024. FAC ¶ 10. Additionally, both because she agreed to be bound by this order and because the March 2023 TOU included similar terms concerning retroactivity and arbitrability, the Court analyzes plaintiff Edwards' claims under the TOU.

### B. Existence of Arbitration Agreement

Before addressing the parties' contentions as to the scope of the arbitration agreement, the Court must first determine whether each Arbitration Plaintiff agreed to arbitrate. *See In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128. Whether an agreement to arbitrate exists is determined by state contract law. *Teta v. Go New York Tours, Inc.*, --- F. Supp. 3d ----, No. 24-cv-01614, 2024 WL 3252907, at *3 (S.D.N.Y. July 1, 2024) (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). Neither party disputes that New York law governs in this case. *See* Mot. 9; Opp'n 16. To form a valid contract under New York law, there must be a "meeting of the minds" and "a manifestation of mutual assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288–89 (2d Cir. 2019) ("Generally, courts look to the basic elements of the offer and the acceptance to determine whether there was an objective meeting of the minds sufficient to give rise to a binding and enforceable contract.").

Courts have grouped "[i]nternet-based agreements between users of a platform and a service provider" into a number of categories, including "browsewrap," and "sign-in-wrap" agreements. *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 829 (S.D.N.Y. 2020). A "browsewrap" agreement "post[s] terms and conditions on a website via a hyperlink at the bottom of the screen." *Meyer*, 868 F.3d at 75. "[S]ign-in-wrap" agreements notify consumers "of the existence and applicability of the site's [TOU] when proceeding through the website's sign-in or login process." *Feld*, 442 F. Supp. 3d at 829.

Both types of interfaces are at issue in this case. All of the Arbitration Plaintiffs' claims involve browsewrap agreements. *See supra* Part C (explaining that each plaintiff indicated agreement with the TOU by placing an order via the SeatGeek website). Plaintiffs Vasell and Grant's claims also involve sign-in-wrap agreements. The Arbitration

Plaintiffs do not dispute that they assented to the TOU via the browsewrap and sign-in-wrap agreements. *See generally* Opp'n; TOU 9–11 § 14. Regardless, the record supports a finding that the parties entered into an agreement to arbitrate by manifesting mutual assent in accordance with New York contract law. The uncluttered layout and clearly visible text on SeatGeek's checkout page provided "reasonably conspicuous" notice that, by clicking the "Place order" button, the user also agreed to the TOU. *Meyer*, 868 F.3d at 78–79; Giuliani Decl. ¶¶ 12–13; *see also* Mot. Ex. G 2, ECF No. 24-10 (depicting the checkout page). Likewise, the account sign-up page displayed distinct grey text, an uncluttered layout, and underlined hyperlinks to the TOU providing similarly conspicuous notice that, by clicking the "Sign up" button, the user also agreed to the TOU. *Meyer*, 868 F.3d at 78–79; Giuliani Decl. ¶¶ 14–15; *see also* Mot. Ex. H 2, ECF No. 24-11 (depicting the sign-up page).

Accordingly, the Court finds that the Arbitration Plaintiffs and defendant entered into an agreement to arbitrate pursuant to the TOU (the "Arbitration Agreement").

### C.   *Scope of Arbitration Agreement*

Given that a valid arbitration agreement existed between the parties, the Court now considers "whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128. In doing so, the Court must "resolve any doubts concerning the scope of arbitrable issues in favor of arbitrability." *Daly*, 939 F.3d at 421. Only where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" may the Court decline to compel arbitration under the FAA. *Id.* For the reasons stated below, the Court finds that the Arbitration Agreement governs the Arbitration Plaintiffs' current dispute with SeatGeek.

i.    Pre-Agreement Conduct

Plaintiffs argue that the TOU does not apply to defendant's "pre-agreement marketing conduct," which forms the basis of their Section 25.07 claims. Opp'n 21. Defendant responds that (1) the TOU "expressly encompass[es] claims that arose before users[] assent[ed]," Reply 8; and that, in any event, (2) the law does not forbid the Court from applying relevant arbitration clauses to "claims that accrued prior to users' assent to [the] TOU," Reply 9.

First, the TOU includes express retroactivity language. Specifically, the Arbitration Agreement applies to "any dispute, claim, or controversy" between the user and SeatGeek, "*including [those] that arose before [the user] accepted these Terms*, regardless of whether prior versions thereof required arbitration." TOU 9 § 14.4 (emphasis added).[9] Arbitration clauses with similarly broad terms covering "any dispute, claim or controversy" have been given retroactive effect in this Circuit. *See, e.g.*, *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 551 (S.D.N.Y. 2018).[10] By its terms, the Arbitration Agreement

_____

[9]    Plaintiffs fail to explain the relevance the July 2021 TOU, whether or not it contained similar retroactivity language. *See* Opp'n 23. As noted, the Arbitration Plaintiffs are all indisputably bound by the TOU because they each purchased tickets on SeatGeek's website, created a SeatGeek account, or opened an email providing notification of the updated TOU. Plaintiffs cannot make the July 2021 TOU pertinent by for the first time mentioning in their Opposition that "absent class member and prospective plaintiff, Themis Pappas" was subject to the July 2021 TOU. *See* Opp'n 24; Svensson Aff. ¶ 5, ECF No. 25-2. However true that allegation may be, it is not before the Court, as plaintiffs may not introduce arbitrability arguments for new class members in their Opposition. *See Roberts v. Weight Watchers Int'l, Inc.*, 217 F. Supp. 3d 742, 753 (S.D.N.Y. 2016) (quoting *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 526 (S.D.N.Y. 2015)).

[10]    Plaintiffs encourage the Court to follow other circuits' decisions not to compel arbitration with regards to "false and misleading" practices that occurred prior to the parties' contractual relationships. *See* Opp'n 22. However, the Court is bound by Second Circuit precedent, which gives "retroactive application to broad arbitration clauses." *See Plazza*, 289 F. Supp. 3d at 551 (quoting *Sacchi v. Verizon Online LLC*, No. 14-cv-00423, 2015 WL 765940, at *9 (S.D.N.Y. Feb. 23, 2015)).

therefore covers alleged violations of Section 25.07 during purchase, which accrue when a ticket seller fails to clearly list the total cost of a ticket with fees "prior to the ticket being selected for purchase" and thus prior to acceptance of the TOU. N.Y. Arts & Cult. Aff. Law § 25.07(4). Similarly, a Section 25.07 claim might "accrue" when a customer views a listing that violates Section 25.07 and then accepts the TOU by creating an account.

Second, there is a "presumption of arbitrability" that, absent "positive assurance that an arbitration clause is not susceptible of an interpretation that covers the asserted dispute," should be "resolved in favor of coverage." *Holick v. Cellular Sales of New York*, 802 F.3d 391, 395 (2d Cir. 2015). Because the TOU contemplates the Arbitration Agreement's retroactive application, that presumption applies. *See also Kutluca v. PQ New York Inc.*, 266 F. Supp. 3d 691, 703–04 (S.D.N.Y. 2017) (collecting cases) ("[T]he weight of authority supports applying broad arbitration provisions retroactively where they do not contain temporal limitations.").

Further, contrary to plaintiffs' argument, *Holick* does not support plaintiffs' position that the Arbitration Agreement is inapplicable to claims accruing before the user's acceptance of the TOU. *See* Opp'n 21–22; *Holick v. Cellular Sales of New York*, 802 F.3d at 393, 399. The Court in *Holick* declined to apply an arbitration clause to pre-agreement conduct because that conduct was regulated by a *previous* contract between the parties. *Holick*, 802 F.3d at 393, 399. Plaintiffs liken this case to *Holick* by emphasizing that the parties had different relationships before and after "enter[ing] into a ticketing agreement." Opp'n 22. This argument is without merit.

In *Holick*, two agreements governed the parties' working relationship: (1) first, a "Sales Agreement" that did not require binding arbitration and deemed plaintiffs independent contractors; and (2) second, an employment "Compensation Agreement"

that featured a "broad" arbitration provision and deemed plaintiffs full-time employees. *Holick*, 802 F.3d at 393–94. Those two contracts governed two types of employment relationships. *Id.* The *Holick* plaintiffs' claims arose out of the Sales Agreement, which they alleged misclassified them as independent contractors. *Id.* at 394. The court reasoned that the arbitration clause in the Compensation Agreement was temporally limited because the "parties' contractual positions"—*i.e.*, whether plaintiffs were classified as independent contractors or full-time employees—"changed in a way that impacted arbitrability." *Id.* at 398. In this changed relationship the court found "positive assurance" that the arbitration requirement was temporally limited to disputes that arose during plaintiffs' full-time employment. *Id.* Because plaintiffs' claims arose out of their employment as independent contractors, the Sales Agreement, which did not require arbitration, governed dispute resolution.

Here, the TOU fundamentally differs from the agreements at issue in *Holick*. For one, when plaintiffs accepted the TOU, those terms replaced any previous agreement between the parties. TOU 2 ("PLEASE NOTE THAT THE TERMS ARE SUBJECT TO CHANGE BY SEATGEEK IN ITS SOLE DISCRETION AT ANY TIME . . . . [Y]our continued use of the Digital Properties and/or Services constitutes your acceptance of such change(s)."). *Holick* involved no such terms. Additionally, in *Holick*, the "evolving business relationship [was] directly relevant to whether" the parties intended to agree to binding arbitration. 802 F.3d at 398. Here, the relationship between the parties remained the same when they visited the Option Page and after they accepted the TOU. Indeed, the TOU defines its signatories as service users and SeatGeek as the service provider and explains that service users are those who visit "Digital Properties" of the service provider, such as its website. TOU 2. Thus, pursuant to the TOU, plaintiffs were SeatGeek service

16

users both before and after entering into the browsewrap agreement and *Holick* is inapplicable.

Accordingly, the terms of the TOU apply retroactively to the Arbitration Plaintiffs' conduct occurring prior to the Arbitration Agreement.

### ii.  Decisions Regarding Arbitrability

Having established that the TOU applies to the Arbitration Plaintiffs' disputes, the Court next turns to the question of "who has the primary power to decide" whether a dispute is subject to arbitration—for purposes of this discussion, "arbitrability." *See Coinbase, Inc. v. Suski*, 602 U.S. 143, 148–49 (2024). Plaintiffs argue that the Court should decide whether their claims are subject to arbitration. Specifically, plaintiffs argue that the Arbitration Agreement's language is too narrow to assign questions of arbitrability to the arbitrator. Opp'n 24. Defendant argues that the question of arbitrability must go to the arbitrator because the parties' relationship is controlled by a broad delegation agreement in the TOU. Mot. 23; Reply 13. For the reasons stated below, the Court finds that questions of arbitrability are properly left for the arbitrator.

Parties can contract that "an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). Courts should give effect to arbitrability agreements—which allow an arbitrator to decide whether a dispute is *subject* to arbitration—only when there is "clear and unmistakable" evidence that parties agreed to do so. *Coinbase*, 602 U.S. at 149. A single arbitration contract with a delegation provision presumptively resolves this antecedent question in favor of the arbitrator. *Coinbase*, 602 U.S. at 152. Thus, "absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration." *Id.*

In this case, there is clear evidence that all Arbitration Plaintiffs consented to a broad delegation provision. Plaintiffs all but admit this and concede that the 2023 versions of SeatGeek's TOUs "arguably track" the "broad language" found to delegate questions of arbitrability to the arbitrator in *Thorne*, 2022 WL 542383, at *13–14. *See* Opp'n 24.[11] Indeed, the delegation language in the TOU is clear: "The arbitrator shall have exclusive authority to resolve any Dispute, including . . . disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement . . . ." TOU 10 § 14.11 (the "Delegation Clause"). By its terms, the Delegation Clause includes arbitrability questions. In fact, the Supreme Court found nearly identical language "quite clearly" delegated arbitrability to an arbitrator. *See Coinbase*, 602 U.S. at 146.

The arbitrability of consolidated plaintiff Edwards' claims, even if not subject to the TOU, would still be a question for the arbitrator. As previously noted, Edwards' complaint suggests that her SeatGeek purchases required her to sign the March 2023 TOU. *See supra* note 5, at 4–5. The March 2023 TOU maintains that "[a]ny question or matter of arbitrability of a dispute shall be determined by the neutral(s) assigned to, or chosen for, the dispute . . . . The parties agree and acknowledge that they are waiving their right to seek a determination of arbitrability in a court of law or other judicial forum." Mar. 2023 TOU § 14.1. Absent allegations or evidence suggesting that this provision is invalid or inapplicable—which plaintiffs do not raise and the Court does not discern based on the record before it—the arbitrability of Edwards' claims is also clearly a question for

---

[11] Plaintiffs contend that the July 2021 TOU "did not include" such broad language and suggest that the July 2021 TOU's delegation clause controls, without explaining to which Arbitration Plaintiffs or why. *See* Opp'n 24. As established *supra*, the TOU is the applicable agreement between SeatGeek and all Arbitration Plaintiffs.

arbitration. Moreover, given Edwards' agreement to be bound by this order, *see* Briefing Stipulation & Order 2, she cannot dispute that her claims are subject to the Delegation Clause's broad language.

Accordingly, the Court finds that the Arbitration Agreement covers any questions as to the arbitrability of the Arbitration Plaintiffs' claims.

### iii.    Unconscionability

A party may assert unconscionability as a defense to the enforcement of an arbitration agreement by (1) challenging the enforceability of the agreement's delegation clause or (2) challenging the validity of the overall agreement. *See, e.g.*, *Long v. Amway Corp.*, 306 F. Supp. 3d 601, 608–09 (S.D.N.Y. 2018); *see also Hu v. Whaleco, Inc.*, No. 23-cv-06962, 2024 WL 4481439, at *20 (E.D.N.Y. Oct. 1, 2024) (collecting cases). If plaintiff specifically challenges the enforceability of the delegation clause, the Court "must consider the challenge" under the relevant state law. *See McCoy v. Dave & Buster's, Inc.*, No. 15-cv-00465, 2018 WL 550637, at *7 (E.D.N.Y. Jan. 24, 2018) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71, 73 (2010)). However, courts must leave "any challenge to the validity of the arbitration agreement as a whole for the arbitrator" and presume the validity of the delegation clause pursuant to Section 2 of the FAA. *Id.* (citing *Rent-A-Ctr.*, 561 U.S. at 72).

Plaintiffs do not challenge the enforceability of the Delegation Clause. Instead, they contend that the Arbitration Agreement is unenforceable because the TOU[12] "contain[s] provisions that are unconscionable and unenforceable." Opp'n 25. Specifically, they argue

---

[12]    Plaintiffs dispute the scope of the language in the July 2021 TOU. *See* Opp'n 24–25. However, as discussed, that agreement is not applicable to the Arbitration Plaintiffs' claims, making any dispute the parties have over this matter immaterial.

that the TOU is a contract of adhesion, *see* Opp'n 26, and that several provisions outside the Delegation Clause are unconscionable: the "pre-arbitration procedures" outlined in Sections 14.2 ("Dispute Resolution/Notice Regarding Mandatory Arbitration") and 14.3 ("Informal Dispute Resolution"); the "Batch Arbitration" requirement in Section 14.7; and the requirement in Section 14.14 that users file claims within one year, *see* Opp'n 29. These arguments are unrelated to the Delegation Clause and are contained in provisions of the Arbitration Agreement separate from the Delegation Clause, which is found in Section 14.11.

Accordingly, because plaintiffs do not challenge the enforceability of the delegation clause, the Court must treat it as valid and enforceable and submit any unconscionability challenges to arbitration. *Hu*, 2024 WL 4481439, at *20 (collecting cases).

<u>iv.</u>    <u>Class Action Waiver</u>

As described above, the TOU includes a class action waiver. *See supra*, Background, II. Defendant argues and plaintiffs do not dispute that this waiver bars the Arbitration Plaintiffs from bringing a class action in the first place. Mot. 24; Opp'n 21–29. Because the TOU is enforceable, the Arbitration Plaintiffs may not bring this action on behalf of a putative class. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 352 (2011) (concluding that FAA permits class action waivers); *Tsadilas v. Providian Nat. Bank*, 13 A.D.3d 190, 191 (1st Dep't 2004) (enforcing class action waiver because, "[u]nder New York law, a contractual proscription against class actions is neither unconscionable nor violative of public policy").[13]

---

[13]    Because it is undisputed that plaintiff Zajac opted out of *only* the TOU's arbitration clause, plaintiff Zajac may be forbidden from bringing a class action complaint. Because defendant does not now raise this argument, the Court need not address it.

*       *       *

For the reasons stated above, SeatGeek's motion to compel arbitration is granted as to the Arbitration Plaintiffs.

## MOTION TO DISMISS

The Court now turns to the remaining claims: plaintiff Zajac's Section 25.07 and unjust enrichment claims. Defendant urges the Court to dismiss these claims pursuant to Rule 12(b)(1), on the basis that plaintiff lacks Article III standing, and 12(b)(6), on the basis that plaintiff fails to state a claim.

### I.    Legal Standard

A "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Huntress v. United States*, 810 F. App'x 74, 75–76 (2d Cir. 2020) (summary order). A court must dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In making this determination, the Court "must accept as true all material factual allegations in the complaint." *Berger v. L.L. Bean, Inc.*, 351 F. Supp. 3d 256, 260 (E.D.N.Y. 2018) (quoting *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004)). A court may also "refer to evidence outside the pleadings" in its assessment. *Makarova*, 201 F.3d at 113.

When deciding a motion to dismiss for failure to state a claim, a court must again "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014). A Rule 12(b)(6) motion probes "the legal, not the factual, sufficiency of a complaint"; thus, factual disputes are not the subject of the Court's analysis. *Plastic*

*Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). Accordingly, "[d]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Panse v. Eastwood*, 303 F. App'x 933, 934 (2d Cir. 2008) (summary order) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). At the same time, plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007). Indeed, "conclusory allegations or legal conclusions masquerading as factual conclusions" are insufficient to prevent dismissal. *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 366 (E.D.N.Y. 2005).

When a court is faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Court "must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Pressley v. City of New York*, No. 11-cv-03234, 2013 WL 145747, at *5 (E.D.N.Y. Jan. 14, 2013); *see also United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155–56 (2d Cir. 1993).

## II. Discussion

The Court finds that plaintiff Zajac has adequately alleged economic injury to establish Article III standing for his damage claims; however, he has failed to allege standing for his injunctive relief claim because he has not plausibly alleged a likelihood of future harm. Further, plaintiff Zajac's Section 25.07 claim will not be dismissed pursuant to the voluntary payment doctrine because its applicability is not apparent at this stage. However, Zajac's unjust enrichment claim is dismissed under Rule 12(b)(6) both because it duplicates his Section 25.07 claim and because it is governed by the TOU.

A. *Rule 12(b)(1)*

Defendant argues that plaintiff Zajac's claims must be dismissed pursuant to Rule 12(b)(1) because plaintiff has not alleged a "concrete injury." *See* Mot. 25. Specifically, SeatGeek argues that plaintiff's allegation of a mere "technical violation" of Section 25.07 is insufficient to give rise to a finding of injury-in-fact because it does not "identify any concrete harm" flowing from that violation. Mot. 26–27.

Federal courts are limited to adjudicating "actual cases or controversies" and are otherwise not invested with the constitutional power to hear a given case. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). A plaintiff lacks Article III standing unless he has, among other requirements, suffered an "injury in fact." *Id.* at 338. To satisfy the injury-in-fact requirement, a plaintiff must suffer harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). An injury is concrete if it is "real, and not abstract" and if it "has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Thus, a concrete injury may be "physical, monetary," or otherwise legally "cognizable intangible harms." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 442–43 (2d Cir. 2022). "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC*, 594 U.S. at 426.

When a Rule 12(b)(1) motion is facial, *i.e.*, based "solely on the allegations of the" pleading, the Court must assess whether the plaintiff "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).

i.  Damage Claims

Contrary to SeatGeek's argument, the FAC adequately alleges that plaintiff Zajac has suffered an injury-in-fact giving rise to Article III standing. This is a "lower threshold than that for sustaining a valid cause of action." *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018).

The face of the complaint alleges that plaintiffs suffered economic harm as a result of defendant's alleged unlawful failure to disclose "the total cost of the ticket . . . in a clear and conspicuous manner" at the "first point that ticket prices [were] displayed on their website." FAC ¶ 58. The FAC specifically alleges that SeatGeek's "failure to disclose the total cost of a ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket," was a violation of Section 25.07(4), making it an unlawful fee. FAC ¶ 59. And as a result, plaintiffs paid defendant's unlawful fees to secure their tickets. *See* FAC ¶¶ 63, 65. That is, he argues that he paid inflated total prices as a result of plaintiff's unlawful nondisclosure of ancillary fees on SeatGeek's "Option Page." FAC ¶ 63; Opp'n 16.

Plaintiff's allegations of paying an unlawful fee to transact with defendant meet the low threshold required to sufficiently plead concrete economic injury. *See Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 95–96, 95 n.10 (2d Cir. 2017) (finding allegation of "unlawful fees" "imposed" on solar project bidder "sufficiently concrete and particularized to qualify as injuries-in-fact"); *Bassaw v. United Industries Corp.*, 482 F. Supp. 3d 80, 85 (S.D.N.Y. 2020) (finding "low threshold" for alleging concrete injury met where plaintiff made a purchase "in reliance" that it would be sold a product "as advertised" and consequently "paid too much for a product based on its misleading advertising"). As noted above, plaintiff Zajac alleges that the price initially provided for his tickets did not include SeatGeek's additional fees, which were not disclosed "prior to . . . being selected for

24

purchase." Opp'n 16. By alleging that he paid unlawful fees to defendant, plaintiff Zajac has pled an injury sufficient to confer Article III standing. *See Charles v. Color Factory, LLC*, No. 24-cv-00322, 2024 WL 1693236 (S.D.N.Y. Apr. 19, 2024) (finding that plaintiff sufficiently alleged injury-in-fact by alleging that she was "charged and paid a fee that was rendered unlawful by defendant's failure to disclose the total cost" as required by Section 25.07).

Defendant attempts to differentiate the FAC from *Charles*, in which the court found the economic injury resulting from a violation of Section 25.07 adequate to confer Article III standing. *Charles*, 2024 WL 1693236, at *3. Specifically, defendant argues that SeatGeek "disclosed the precise amount of fees multiple times prior to check out" and separated "fees and taxes" for users. *See* Mot. 27–28. This is a factual dispute not before the Court on a motion to dismiss. Instead, plaintiff need only plausibly and affirmatively allege facts suggesting that he suffered "economic injury that flowed from defendant's purported violation of the statute." *Charles*, 2024 WL 1693236, at *3. Plaintiff has sufficiently alleged defendant's unlawful nondisclosure, as well as the charges he incurred as a result. *See, e.g.*, Svensson Aff. ¶¶ 2–4; FAC ¶¶ 63, 65. Reading all factual allegations in plaintiff's favor, the FAC sufficiently alleges such resulting economic injury.

For similar reasons, defendant's argument that *TransUnion* counsels dismissal of this action fails. Specifically, defendant contends that plaintiffs "do not allege any injury beyond a bare statutory violation," and fail to "identify any concrete harm" flowing from its alleged violation of Section 25.07. Mot. 26–27. But *TransUnion* did not involve the sort of concrete "pocketbook injury" alleged by the FAC. *See Tyler v. Hennepin Cnty.*, 598 U.S. 631, 636 (2023) (finding a claim that one party kept money to which it was not entitled sufficient injury for standing).

25

In *TransUnion*, a class of plaintiffs sued under the Fair Credit Reporting Act (FCRA) alleging that a credit reporting agency "failed to use reasonable procedures to ensure the accuracy of their credit files" and, for a subset of class members, "provided misleading credit reports to third-party businesses." 594 U.S. at 417. The Court held that inaccurate information in internal credit files did not constitute concrete harm, but that plaintiffs "whose reports were disseminated to third parties suffered a concrete injury in fact." *Id.* at 432. In doing so, the Court articulated the requirement that a plaintiff alleging standing based on "informational injury" must also demonstrate "downstream consequences from failing to receive" information. *Id.* at 441–42. *TransUnion*'s focus on informational injury is inapplicable here, where plaintiff has alleged concrete economic injury flowing from defendant's violation of a statutory provision. *See Charles*, 2024 WL 1693236, at *3 (quoting *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 574 (2d Cir. 2018)).

Defendant also asserts that because Section 25.29(1) makes "service charges and fees" lawful, plaintiffs were not charged unlawful fees. Mot. 26. However, that argument gets to the merits of plaintiff's Section 25.07 claim. Standing is established "regardless of the merits of the plaintiff's statutory interpretation" so long as a "plaintiff alleges a concrete, economic injury resulting from a defendant's violation of a statutory provision." *Dubuisson*, 887 F.3d at 574; *see also Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal."). Whether plaintiff's claim is ultimately meritorious is a question distinct from whether he has standing to bring such a claim.

Accordingly, the Court finds that plaintiff Zajac has Article III standing to bring his claims for economic damages.

ii.    Injunctive Relief

Defendant also challenges plaintiff Zajac's standing as it pertains to his request for injunctive relief. Though the Court finds that Zajac has sufficiently alleged injury to confer standing for his damages claims, the same cannot be said as to his claim for injunctive relief. Plaintiff's complaint includes no facts suggesting a likelihood of future harm from defendant's conduct and thus fails to demonstrate standing.

A plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). To maintain an action for injunctive relief, a plaintiff "cannot rely on past injury but must show a likelihood that he will be injured in the future." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). A "threatened injury must be *certainly impending* to constitute an injury in fact." *Am. C.L. Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (emphasis in original). Injury that is "merely conjectural or hypothetical" is insufficient to confer Article III standing for injunctive relief. *Berni*, 964 F.3d at 147.

Here, plaintiff Zajac's knowledge of SeatGeek's allegedly deceptive pricing practices renders implausible that he would likely pay unlawful fees in the future. The FAC repeatedly alleges defendant's failure to display full ticket prices to users. *See, e.g.*, FAC ¶¶ 8, 9, 10, 11 (representing that each plaintiff was only shown additional fees after "selecting seating" or "clicking through multiple pages"); FAC ¶ 24 (noting that, on the order summary page, the purchaser is made aware "for the first time in the multi-step purchase process" of its obligation to pay "Fees"); FAC ¶ 25–30 (alleging that defendant engages in "dark patterns to lure customers into purchasing tickets that ultimately include junk fees"). Accordingly, because plaintiff is "aware of the very deception [he] challenge[s]," he is in no danger of being "misled again in the future." *Binder v. Premium*

27

*Brands Opco LLC*, No. 23-cv-03939, 2024 WL 2978506, at *4 (S.D.N.Y. June 11, 2024) (concluding plaintiffs lacked standing to pursue injunctive relief, because "their admitted knowledge of defendant's pricing practices renders implausible their allegation that they may again be misled"); *see also Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 565 (S.D.N.Y. 2017) (finding no Article III standing for injunctive relief where plaintiffs discovered that certain retail prices were illusory and thus "they cannot be misled" in the future). Having shown no likelihood that he will be injured in the future, plaintiff Zajac has failed to plead standing for injunctive relief.[14]

Accordingly, plaintiff Zajac's claim for injunctive relief is dismissed.

### B. *12(b)(6) Claims*

Defendant also argues that the FAC should be dismissed because plaintiff Zajac has failed to state a claim upon which relief can be granted. Specifically, defendant contends that the voluntary payment doctrine bars plaintiff Zajac's claims. Mot. 29. Defendant also argues that plaintiff Zajac's unjust enrichment claim must fail both because it is duplicative of the Section 25.07 claim, and because a contract governs the parties' dispute. Mot. 30. The Court denies defendant's motion to dismiss the FAC under

---

[14]    Plaintiff Zajac's argument that he has standing because he, or other plaintiffs, would purchase tickets on SeatGeek again does not remedy this error. Opp'n 19; Zajac Aff. ¶¶ 4–6, ECF No. 25-1. For one, Zajac's claims that he would purchase tickets from SeatGeek again if it "comes into compliance with ACAL" and that "there is a high probability" he will "have no choice but to use SeatGeek's platform to purchase tickets again in the future" are hypothetical. *See* Zajac Aff. ¶¶ 4, 6. Hypothetical allegations of future injury are insufficient to establish Article III standing. *Berni*, 964 F.3d at 147. Secondly, Zajac did not include these allegations in his complaint, and the Court need not consider such unalleged facts when deciding a motion to dismiss. *Zick v. Waterfront Comm'n of N.Y. Harbor*, No. 11-cv-05093, 2012 WL 4785703, at *3 (S.D.N.Y. Oct. 4, 2012).

the voluntary payment doctrine, but grants its motion as to plaintiff Zajac's unjust enrichment claim.

## i.   Voluntary Payment Doctrine

The "voluntary payment doctrine" is a New York common law doctrine barring "recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 276 (S.D.N.Y. 2014). The doctrine "does not apply when a plaintiff's claim is predicated on a lack of full disclosure by defendant." *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 649 (S.D.N.Y. 2011) (citing *Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009)). As an affirmative defense, courts are reluctant to dismiss claims under the voluntary payment doctrine at the pleading stage. *Morgulis v. Bus Patrol Am., LLC*, No. 24-cv-00113, 2024 WL 3639126, at *5 (S.D.N.Y. Aug. 1, 2024) (collecting cases). Where the pleadings "do not establish whether Plaintiffs knew or should have known that the product prices were" misleading, dismissal under voluntary payment doctrine is premature. *See Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 106 (S.D.N.Y. 2022) (quoting *Spagnola*, 574 F.3d at 73).

Plaintiff pleads exactly those circumstances here, as he alleges that defendant failed to fully disclose ticket fees as required by the relevant statute. The FAC alleges that plaintiffs were harmed by paying "added Fees" that were (1) not disclosed to plaintiffs "at the beginning of the purchase process," in violation of Section 25.07(4)'s requirement that costs and fees "be displayed in the ticket listing prior to the ticket being selected for purchase"; and (2) not "clearly and conspicuously disclosed on the final checkout page," in violation of Section 25.07(4)'s instruction that the "total cost of the ticket, inclusive of all ancillary fees" be disclosed "in a clear and conspicuous manner." *See* FAC ¶¶ 63, 65;

29

N.Y. Arts & Cult. Aff. Law § 25.07(4). These allegations alone plead "a lack of full disclosure" on SeatGeek's part. *See Fink*, 810 F. Supp. 2d at 649. And any argument defendant makes about plaintiff's knowledge "of the exact amount of fees" or that plaintiff did not purchase their tickets under duress, Mot. 29–30, "would require the Court to make factual determinations about the nature of the taxes and fees that defendant charged and disclosed, which would not be appropriate on a motion to dismiss," *Charles*, 2024 WL 1693236, at *4.

Furthermore, this case is unlike *Shelton*, which defendant relies upon. Mot. 30; Reply 16–17. In *Shelton*, plaintiff's pleading established her own awareness that she was being overcharged. *See Shelton v. CIOX Health, LLC*, No. 17-cv-00808, 2018 WL 4211447, at *4 & n.5 (E.D.N.Y. July 20, 2018) (declining to apply voluntary payment doctrine where plaintiff was "fully aware" at time of payment that fee amount violated statutory cap). The FAC does not indicate plaintiff's awareness upon purchase that he was charged unlawful fees. Additionally, the *Shelton* court found that the plaintiff's payment was voluntary as there was "no duress by reason of time or anything else forcing Shelton's payment." *Id.* at *4. For example, plaintiff had received her requested medical records *before* knowingly making the allegedly unlawful payment. *Id.* The same cannot be said here, where plaintiff was required to make a payment in order to secure his tickets.

Thus, reading the FAC's allegations in his favor, the voluntary payment doctrine cannot stand as a basis for dismissal of plaintiff Zajac's claims at this juncture.

### ii.    Unjust Enrichment

Plaintiff's unjust enrichment claim fails as a matter of law for two reasons. First, it duplicates his Section 25.07 claim. Second, the TOU governs his dispute with SeatGeek and therefore preempts this common law claim.

Under New York law, a plaintiff may plead unjust enrichment by alleging that defendant "benefitted" at "plaintiff's expense" and that "equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). Unjust enrichment claims are "unavailable where [they] simply duplicate[], or replace[], a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). "Two claims are duplicative of one another if they arise from the same facts." *NetJets Aviation, Inc. v. LHC Commc'ns*, 537 F.3d 168, 175 (2d Cir. 2008). "[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017).

Here, plaintiff's unjust enrichment claim is based on the same factual allegations as his Section 25.07 claim. Plaintiff's unjust enrichment claim, like his Section 25.07 claim, is premised on defendant's alleged charging of unlawful fees that were "not disclosed to Plaintiffs at the beginning of the purchase process," FAC ¶ 63, but were "added" later during the purchase process, FAC ¶ 69. Because he has failed to explain how these two claims differ, plaintiff's unjust enrichment claim is dismissed. *See Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 360–61 (S.D.N.Y. 2022) (dismissing unjust enrichment claim as based on the same theory as, and thus duplicative of, statutory claim).

Relatedly, because plaintiff has failed to plausibly allege that his unjust enrichment claim governs a different subject matter than his statutory claim, the Court declines to permit alternative pleading. *See Franklin v. Waters*, No. 16-cv-09819, 2018 WL 3231660, at *5 (S.D.N.Y. Apr. 10, 2018) (denying alternative pleading where there was "no dispute

as to the validity of the contract"); *111 W. 57th Inv. LLC v. 111 W57 Mezz Inv. LLC*, 198 N.Y.S.3d 521, 521 (1st Dep't 2023), *leave to appeal denied*, 41 N.Y.3d 905 (2024) (dismissing unjust enrichment claim because "a written agreement govern[ed] the subject matter at issue").

## STAY OF PROCEEDINGS

Under Section 3 of the FAA, a district court must stay the judicial proceedings upon "application of one of the parties" where the asserted claims are "referable to arbitration." 9 U.S.C. § 3. Stay, as opposed to dismissal, of a case referred to arbitration "is consistent with the FAA's underlying policy to move the parties to an arbitrable dispute out of court and into arbitration as quickly and as easily as possible . . . unencumbered by the uncertainty and expense of additional litigation . . . ." *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015). Defendant has requested a stay of litigation pending arbitration, *see* Oral Arg. Tr. 24:4–13 (draft on file with court), and the Court finds that such a stay will conserve resources and avoid implicating issues common to all claims. Accordingly, the Court stays all proceedings in this action pending arbitration.

**CONCLUSION**

For the reasons above, defendant's motion to compel arbitration is **GRANTED** as to the Arbitration Plaintiffs and consolidated plaintiff Edwards. The action is stayed with respect to all plaintiffs pending the outcome of arbitration. The parties shall provide a status report regarding the status of arbitration within thirty (30) days of the completion of arbitration or by July 17, 2025, whichever is sooner. Defendant's motion to dismiss is **GRANTED** with respect to plaintiff Zajac's request for injunctive relief and unjust enrichment claim, but is otherwise **DENIED**. Plaintiff Carey is directed to officially discontinue this action within fourteen (14) days.

**SO ORDERED.**

  _/s/ Natasha C. Merle_____
NATASHA C. MERLE
United States District Judge


Dated:        January 17, 2025
              Brooklyn, New York